IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

RICHARD WEAVER                                                                           PETITIONER

v.                                    NO. 1:17-cv-00001 BRW/PSH

WENDY KELLEY, Director of the                                                RESPONDENT
Arkansas Department of Correction

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

<u>STATE AND FEDERAL COURT PROCEEDINGS</u>. The record reflects that on August 11, 2015, petitioner Richard Weaver ("Weaver") was charged in Cleburne County Circuit Court case number CR-2015-160 ("2015-160"). He appears to have been detained in the Cleburne County Jail while he awaited the final disposition of the case.

On January 6, 2017, or before the final disposition of 2015-160, Weaver began the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition and in two subsequently filed pleadings, he challenged the pre-trial proceedings that had occurred, or failed to occur, up to that point in 2015-160.

Because Weaver advanced claims in more than one pleading, United States District Judge Billy Roy Wilson gave Weaver an opportunity to file an amended petition in which he incorporated all of his claims into a single petition. When Weaver failed to file an amended petition, respondent Wendy Kelley ("Kelley") was served with copies of, <u>inter alia</u>, Weaver's initial petition and the pleadings he filed in opposition to his prior custodial agent's request for dismissal. The pleadings, taken together, appeared to comprise Weaver's claims in the case at bar.

Weaver subsequently filed a document that the Clerk of the Court construed as a Notice to the Court. In the Notice, Weaver represented that he desired to file an amended petition. Out of an abundance of caution, and because Kelley would suffer no prejudice, Kelley was temporarily relieved of her obligation to file a response and Weaver was given another opportunity to file an amended petition. He was directed to incorporate all of his claims into his amended petition, and he was warned that a claim not raised in the amended petition would not be considered.

Weaver thereafter filed an amended petition for writ of habeas corpus. Although he did not specifically mention 2015-160 in the amended petition, he offered several reasons why his constitutional rights were violated in that case. He alleged, in full, the following:

> I was appointed … [counsel] that did nothing in the 19 months I was in jail, and my right to a speedy trial [was] violated. I had been informed the public [defender] … quit my case. I was not given an [appropriate] mental [evaluation]. The mental and physical decomp from being in the county jail for that period of time has [affected] me in many ways. Then under duress and confusion, I was forced to sign a plea [bargain] by some random lawyer I have never met or spoken with before who supposedly was representing me. I have [reason] to believe that Judge Tim Weaver is related to me and should not have had the right to conduct the court on my case. I have found out that the Court has amended my sentencing on two (2) separate accounts. I do not know what was changed and did not know they could change or tamper with signed documents without my presence or knowledge.
>
> My family wasn't [informed] or [allowed] at the court. The mental evaluation was rigged. [Ineffective counsel] and poor, inappropriate court proceedings. The county jail kept the money I had on the books [there] for [unknown] reasons. I believe my sanity is at risk given the consequences of everything leading up to now. I believe my rights have been violated and that this all should be overturned and thrown out.

See Docket Entry 32 at CM/ECF 1-2.

Kelley filed a response to Weaver's amended petition. In the response, Kelley maintained that Weaver's amended petition should be dismissed because the claims contained in the petition are procedurally barred from federal court review, they are not cognizable in federal court, and they otherwise warrant no relief. Kelley additionally provided a chronology of the events that ultimately led to the final disposition of 2015-160. The undersigned adopts the chronology. It is, in part, as follows:

> On January 31, 2017, [Weaver] appeared with counsel before the circuit court of Cleburne County, Arkansas, and pleaded guilty to the offenses of second-degree stalking, first degree terroristic threatening, and reckless burning. … The court entered its sentencing order the following day, February 1, 2017, showing that [Weaver] was sentenced to terms in the Arkansas Department of Correction of 96 months for second-degree stalking and no sentence[] imposed for the terroristic threatening and reckless burning charges. … A first-amended sentencing order was entered on February 6, 2017, to reflect that [Weaver] had also been sentenced to terms of 72 month[s] for both the terroristic-threatening and reckless burning charges, as a notation at the bottom of page 3 of the sentencing order reflects. Those sentences for the three offenses were ordered to run concurrently to each other, so [his] total sentence was still 96 months. … The court entered a second-amended sentencing order on February 14, 2017. A notation at the bottom of page three of that order explains that it corrected [his] date of birth and "to correct the sentences of all offenses." The second-amended sentencing order showed that [Weaver] was sentenced to 72 months on the stalking count and to terms of 24 months on both the terroristic threatening and reckless burning charges. The sentences of 24 months were to be served concurrently to each other, but consecutively to the 72-month sentence. [His] total sentence was 96 months.
>
> … Because [Weaver] pleaded guilty, he was not entitled to appeal his convictions to the Arkansas appellate courts. … The dockets of the Arkansas Supreme Court and Arkansas Court of Appeals do not reflect that there has been any appeal filed by [Weaver] with regard to his convictions. The circuit-court records in Cleburne County do not show that [he] ever filed a petition for post-conviction relief under Ark. R. Crim. P. 37 or any other postconviction motions or petitions. Thus, there has been no appeal to the State's appellate courts in any postconviction matters.

See Docket Entry 33 at CM/ECF 1-3.

Weaver was accorded an opportunity to file a reply to Kelley's response. Weaver took advantage of that opportunity and filed a reply. In it, Weaver alleged the following:

> If I knew about all those rules and petitions, I would have started somewhere else.

4

> Tammy Harris [i.e., Weaver's first attorney] did nothing for me. She never sent mail, never stopped by the Jail and discussed the case. Never told her secretary to tell me when I called that she had any messages for me. Absolutely nothing.
>
> I went the entire year of 2016 without ever being taken to court. What they are calling an evaluation was a joke. One crazy old man who spoke to the jailer who carried me over there and didn't even bother to give me a proper examination. So no, I didn't get a mental evaluation. [I] got to go for a ride is all that amounted to.
>
> Y'all have no idea what it's like to be caged like a dog for 19 months and when you get to go outside, you're chained up like a dog. There is an extreme amount of mental distress then when I finally got to go to court, some strange guy sits me in a room and says this is what you're going to do, and that if I embarrass him, that he and the prosecutor would make my life worse than it already is.
>
> Now, I've highlighted on the questions where I hesitated and almost told the Judge that I was being forced to sign off on that paperwork.
>
> As far as the amended sentencing, I feel that any signed document that is being changed no matter how small the change is or what effect is has should still have all parties present.
>
> When I was arrested, I had been under the influence of every kind of drug I could find cause my mom passed away so I didn't even know where I was at or what for … the first couple of weeks after being put in Jail so I really don't know if anything really happened or not. I have no mental recollection of anything.

See Docket Entry 35 at CM/ECF 1-2. Weaver accompanied his reply with two pages from the transcript of his change of plea/sentencing hearing. The pages apparently reflect the point in the hearing when he allegedly "hesitated" and "almost" reported to being coerced into pleading guilty. See Docket Entry 35 at CM/ECF 2.

The undersigned has now thoroughly reviewed the parties' pleadings and exhibits. On the basis of that review, the undersigned is persuaded that Weaver's petition should be dismissed with prejudice.

EXHAUSTION. 28 U.S.C. 2254(b) provides that, with two exceptions not applicable here, a petition for writ of habeas corpus shall not be granted unless it appears that the petitioner has exhausted the remedies available to him. 28 U.S.C. 2254(c) provides that a petitioner shall not be deemed to have exhausted the remedies available to him if "he has the right ... to raise, by any available procedure, the question presented."

State law determines if a state remedy is presently available, and the state courts are the ones that speak with final authority on the question. See Simpson v. Camper, 927 F.2d 392 (8th Cir.1991). "If a federal court is unsure whether a claim would be rejected by the state courts, the habeas proceeding should be dismissed without prejudice or stayed while the claim is fairly presented to them." See Rankin v. Norris, 2009 WL 1973465, 2 (E.D.Ark. 2009) (Moody, J.) (internal citations omitted).

Arkansas Rule of Criminal Procedure 37.2 provides that a petitioner who pleads guilty in an Arkansas state court has ninety days within which to file a petition for post-conviction relief ("Rule 37 petition") in the appropriate circuit court. Weaver pleaded guilty in 2015-160 on January 31, 2017, and therefore had until approximately May 2, 2017, to file a timely Rule 37 petition in Cleburne County Circuit Court. He not only did not file a timely Rule 37 petition in Cleburne County Circuit Court, he never filed a Rule 37 petition. His claims in the petition at bar include a challenge to his attorneys' representation, a claim that he can only be raised in a Rule 37 petition. The question is whether this case should be dismissed without prejudice or stayed so that he can return to Cleburne County Circuit Court and attempt to file a belated Rule 37 petition in which he raises a challenge to counsels' representation.

The time requirement of Rule 37.2 is "jurisdictional in nature." See Engram v. State, 2013 Ark. 424, 430 S.W.3d 82, 86 (2013). "If the time limitations of the rule are not met, a trial court lacks jurisdiction to consider a Rule 37.1 petition." See Id. The Arkansas Supreme Court has permitted the filing of a belated Rule 37 petition upon a showing of good cause, but the instances appear to be limited to capital cases. See Id. (capital case, belated Rule 37 petition accepted). See also Vera v. State, 2016 Ark. 238, --- S.W.3d ---, 2016 WL 3213608 (2016) (non-capital case, belated Rule 37 petition rejected); Thomas v. State, 2014 Ark. 123, 431 S.W.3d 923 (2014) (capital case, belated Rule 37 petition accepted).

This case should not be dismissed without prejudice or stayed so that Weaver can return to Cleburne County Circuit Court and attempt to file a belated Rule 37 petition. The undersigned so finds because requiring him to do so would be requiring him to perform a futile act.[1] This case is not a capital case and is not the type of case in which a belated Rule 37 petition would be accepted. Any attempt by him to file a belated Rule 37 petition would be summarily rejected.

PROCEDURAL BAR. Kelley maintains that Weaver's claims in his petition are procedurally barred from federal court review and cannot be considered. Kelley so maintains because Weaver did not appeal any aspect of his guilty plea and sentence and never filed a Rule 37 petition.[2]

---

[1] A petitioner is not required to file a futile request for relief in state court. See Rodgers v. Wyrick, 621 F.2d 921 (8th Cir. 1980). A federal court should defer action only "if there is some reasonable probability that the relief which the petitioner seeks will actually be available to him." See Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir. 1981).

[2] Arkansas Rule of Appellate Procedure-Criminal 1(a) generally precludes an appeal following a guilty plea. There are, though, exceptions to that rule. See Canada v. State, 2014 Ark. 336, 439 S.W.3d 42 (2014) (three exceptions to general rule precluding appeal following guilty plea). None of those three exceptions were applicable in this instance.

Generally, the federal courts will not consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. See Wainwright v. Sykes, 433 U.S. 72 (1977). A claim can nevertheless be considered if the petitioner can show cause for his failure to properly present the claim or show that the failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent. See Wallace v. Lockhart, 12 F.3d 823 (8th Cir. 1994).

Weaver never presented any of his claims to the state courts of Arkansas in accordance with its procedural rules. Thus, he procedurally defaulted the claims, and the question is whether his procedural default can be excused or otherwise overlooked.

Weaver has offered no cause for his procedural default, and he does not allege that he is actually innocent. Although he alleges that his attorneys were ineffective, and ineffective assistance of counsel can serve as cause for a default, see Martinez v. Ryan, 566 U.S. ---, 132 S.Ct. 1309, 182 L.E.2d 272 (2012), his allegation cannot serve as cause. It is not a "substantial" claim for the reasons outlined in these Findings and Recommendation, and he never filed a Rule 37 petition in the first instance.[3]

---

[3] "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." See Martinez v. Ryan, 132 S.Ct. 1309, 1320.

As applied in Arkansas habeas cases, the Martinez exception only allows a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural default, where: (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.' " Dansby v. Hobbs, 766 F.3d 809, 834 (8th Cir. 2014) (quoting Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013)); see Sasser v. Hobbs, 735 F.3d 833, 853 (8th Cir. 2013) (applying Martinez and Trevino to Arkansas proceedings).

See Feuget v. Kelley, 2017 WL 2927168, 10 (E.D. Ark. Mar. 23, 2017) (Ray, J), report and recommendation adopted, 2017 WL 2927820 (E.D. Ark. July 7, 2017) (Miller, J.).

Weaver alleges that he was mentally incompetent at the time he pleaded guilty and, liberally construing his submission, was incompetent during the time he could have filed a Rule 37 petition. Assuming without deciding that lack of competency can serve as cause for a procedural default, there is nothing to substantiate his allegation of impaired capacity, and he never placed his mental competency in issue.

Weaver can show no cause for his procedural default, and he does not allege that he is actually innocent. Thus, his claims cannot be considered because they are procedurally barred from federal court review. Out of an abundance of caution, though, the undersigned will nevertheless briefly consider the merits of each claim.

INEFFECTIVE ASSISTANCE OF COUNSEL. Weaver's first claim involves a challenge to his attorneys' representation. He alleges that his first attorney did nothing during the nineteen months she represented him and eventually quit. She allegedly never sent him mail, never stopped by the jail to discuss his case, and never communicated with him. Weaver alleges that he was forced to sign a plea agreement by his second attorney, an attorney Weaver had never spoken to prior to the change of plea/sentencing hearing.

Weaver's claim is governed by Strickland v. Washington, 466 U.S. 668, 689 (1984), which requires a two-part showing and requires the undersigned to "indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Weaver must first show that counsel's performance fell below an objective standard of reasonableness. See White v. Dingle, 757 F.3d 750 (8th Cir. 2014). Weaver must also show prejudice. See Id. In the context of a guilty plea, he must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty but would have instead gone to trial. See Hill v. Lockhart, 474 U.S. 52 (1985).

Weaver's claim warrants no relief for two reasons. First, he cannot show that his attorneys' performance fell below an objective standard of reasonableness. Although he alleges that his first attorney did not communicate with him and his second attorney forced Weaver to sign a plea agreement, the allegations are belied by the representations he made in open court during the change of plea/sentencing hearing.[4]

Weaver maintains that he "hesitated" during the change of plea/sentencing hearing and "almost" reported to be coerced into pleading guilty. Solemn declarations in open court carry a strong presumption of verity. See Blackledge v. Allison, 431 U.S. 63 (1977). Here, Weaver never voiced any hesitation about pleading guilty nor did he give any indication to the state trial court judge that the plea was anything but the product of a knowing and intelligent choice. Given the representations Weaver made during the hearing, he cannot now complain about his attorneys' allegedly deficient performance.

---

[4] At the hearing, the state trial court judge and Weaver engaged in a colloquy that included the following exchange:

Q. [state trial court judge]. You're represented by an attorney, Mr. Denton.

A. [Weaver]. Yes, sir.

Q. And you've also been represented by Ms. Harris in the past.

A. Yes, sir.

Q. Are you satisfied with the representation provided by Mr. Denton and Ms. Harris?

A. Yes, sir.

…

Q. Do you have any objections or complaints to make about Mr. Denton or Ms. Harris?

A. No, sir.

See Docket Entry 33, Exhibit 1 at CM/ECF 3.

Second, assuming arguendo that Weaver's attorneys erred as he alleges, he can show no prejudice. He admitted in open court that he is guilty of second-degree stalking, first degree terroristic threatening, and reckless burning.[5] He has failed to show how his attorneys' allegedly poor communication, or some other aspect of their representation, hindered his defense or even what his defense might have been. In short, he has not shown a reasonable probability that, but for counsels' alleged errors, he would not have pleaded guilty but would have insisted upon going to trial.

SPEEDY TRIAL. Weaver's second claim involves his right to a speedy trial. He maintains that his right to such a trial was violated when he was forced to wait approximately seventeen months, or from August of 2015 until January of 2017, for the final disposition to be made of 2015-160.

Weaver's claim warrants no relief. A knowing and voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects, and the right to a speedy trial is non-jurisdictional in nature. See Cox v. Lockhart, 970 F.2d 448 (8th Cir. 1992) [numerous citations and quotations omitted]. Here, the record establishes that Weaver entered a knowing and voluntary plea of guilty. He was apprised of his constitutional rights, was notified of the nature and punishment of the charges against him, and admitted in open court that he committed the offenses. The colloquy between Weaver and the state trial court judge leaves little doubt that Weaver understood what was transpiring when he pleaded guilty. In light of his knowing and voluntary guilty plea, he waived any violation of his right to a speedy trial.

---

[5] The statements made in connection with a guilty plea can provide a "sufficient factual basis to support [the] guilty plea." See Sanders v. Moore, 2010 WL 816175, 3 (E.D.Mo. 2010) [citing Cummings v. United States, 831 F.2d 779, 781 (8th Cir. 1987)]. When Weaver was asked if he was pleading guilty because he was guilty, he answered, "Yes, sir." See Docket Entry 33, Exhibit 1 at CM/ECF 5.

MENTAL COMPETENCY. Weaver's third claim involves a challenge to his mental competency. He maintains that he was not afforded an adequate mental evaluation or, alternatively, that the mental evaluation he underwent was inadequate. As a result, he maintains that his guilty plea was involuntary.

Weaver's claim warrants no relief for three reasons. First, there is no evidence that he ever placed his mental competency in issue prior to pleading guilty. Second, he acknowledges in his submissions that he received a mental competency evaluation but offers no facts to substantiate his assertion that it was inadequate. Third, the colloquy between Weaver and the state trial court judge leaves little doubt that Weaver understood what was transpiring when he pleaded guilty.

VOLUNTARINESS OF GUILTY PLEA. Weaver's fourth claim involves a challenge to the voluntariness of his guilty plea. He maintains that he pleaded guilty "under duress and confusion" and had never spoken to his defense attorney prior to the change of plea/sentencing hearing.

It is axiomatic that a guilty must be entered voluntarily and intelligently. See Boykin v. Alabama, 395 U.S. 238 (1969). In making that determination, the courts look to the totality of the circumstances. See Lindner v. Wyrick, 644 F.2d 724 (8th Cir. 1981).

Weaver's claim warrants no relief because the totality of the circumstances establish that he entered a knowing and intelligent plea of guilty. He was informed of, and waived, his constitutional rights; was notified of the charges against him; understood the charges against him; denied being coerced into pleading guilty; and admitted that he committed the offenses. Specifically, the transcript reflects that the following exchange occurred between the state trial court judge and Weaver:

Q. You're charged with stalking in the second degree, a class D felony, carrying a range of punishment up to six years in the department of corrections and/or a $10,000.00 fine. Terrorist threatening, a class D felony, carrying a range of punishment up to six years in the Arkansas Department of Corrections and/or a $10,000.00 fine. And reckless burning, a class D felony, carrying a range of punishment up to six years in the Arkansas Department of Corrections and/or a $10,000.00 fine.

You're looking at up to 18 years in the Arkansas Department of Corrections and/or a $30,000.00 fine. Is that your understanding?

A. Yes, sir.

Q. And have you gone over those charges and range of punishment with your attorney?

A. Yes, sir.

Q. And you understand them?

A. Yes, sir.

Q. Okay. I have a plea agreement, and a plea statement. And they both seem to bear your signature. Is this, in fact, your signature on these documents?

A. Yes, sir.

Q. Have you read these documents?

A. Yes, sir.

Q. And have you gone over them with your lawyer?

A. Yes, sir.

Q. Do you understand them?

A. Yes, sir.

Q. Any questions?

A. No, sir.

Q. Anything you don't understand?

A. No, sir.

Q. Do you waive your right to trial by jury?

A. Yes, sir.

…

Q. Do you waive your right to confront witnesses against you?

A. Yes, sir.

Q. Do you waive your right to present witnesses in your own behalf?

A. Yes, sir.

Q. Is this plea voluntary?

A. Yes, sir.

Q. Has anyone applied any force or threats to get you to enter into this plea?

A. No, sir.

Q. Have any promises been made to you other than what's contained in this plea paperwork?

A. No, sir.

…

Q. And Mr. Weaver, you're pleading guilty because you are, in fact, guilty?

A. Yes, sir.

…

Q. And Mr. Weaver, do you wish to make any statement?

A. No, sir.

Q. Then I find you knowingly and intelligently entered your guilty plea and I will so sentence you.

See Docket Entry 33, Exhibit 1 at CM/ECF 3-6. Weaver did not mention at any point during the change of plea/sentencing hearing that he was under duress or confused, and there is nothing to suggest that he was or might have been. Because he admitted in open court that he was satisfied with the services of his second attorney, he cannot now complain about having never spoken with counsel prior to the hearing.

CONFLICT OF INTEREST. Weaver's fifth claim involves a challenge to the impartiality of the state trial court judge. Weaver has reason to believe that he is related to the state trial court judge, and the jurist should not have been allowed to preside over the proceedings in 2015-160.

Weaver's claim warrants no relief for the reasons advanced by Kelley. The undersigned adopts those reasons, which are as follows:

> … Even though both the judge and petitioner share the same last name, petitioner has offered no proof that he and the judge are related or that any familial relationship played any role in the circuit-court proceedings. Neither Judge Weaver nor petitioner expressed any awareness of knowing each other or being related at the guilty-plea hearing. In the absence of any proof that there was a relationship, that the judge knew of the relationship, and that the relationship adversely affected the entry of petitioner's guilty plea or the sentence he received, he has failed to state a claim for which he can be granted relief. …

See Docket Entry 33 at CM/ECF 5.

THE AMENDMENTS TO THE SENTENCING ORDER. Weaver's sixth claim involves a challenge to the two amended sentencing orders entered in 2015-160. He correctly notes that the initial sentencing order was amended on two separate occasions. It is his contention that his constitutional rights were violated when he was not allowed to be present when the amended sentencing orders were entered.

A defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. ... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." See Atwood v. Mapes, 325 F.Supp. 2d 950, 975 (N.D.Iowa 2004), aff'd, 142 F.Appx. 961 (8th Cir. 2005). The district court in Atwood v. Mapes cited Peterson v. United States, 411 F.2d 1074 (8th Cir. 1969), for the proposition that while the defendant has a constitutional right to be present at all stages of the criminal proceeding, he is not entitled to habeas corpus relief where his substantial rights were not prejudiced by his absence. Moreover, "the right to be present at one's sentencing does not translate into a right to be present whenever judicial action modifying a sentence is taken." See United States v. Saenz, 429 F.Supp.2d 1109, 1113 (N.D.Iowa 2006) [internal quotation and citations omitted] [applying Federal Rule of Criminal Procedure 43(a)(3)].[6]

On January 31, 2017, Weaver pleaded guilty to second degree stalking, first degree terroristic threatening, and reckless burning. He was told that his sentence would be ninety-six months imprisonment. See Docket Entry 33, Exhibit 1 at CM/ECF 6.

A sentencing order was entered on February 1, 2017. See Docket Entry 33, Exhibit 2. It reflected that Weaver was sentenced to ninety-six months imprisonment for second degree stalking but did not reflect a sentence for either terroristic threatening or reckless burning.

---

[6] The right to be present under the Due Process Clause is understood to be narrower than the right to be present under Rule 43. See United States v. Parrish, 427 F.3d 1345 (11th Cir. 2005).

16

Five days later, a first amended sentencing order was entered. See Docket Entry 33, Exhibit 3. The purpose of the amendment was to reflect a sentence for all three offenses. The amendment provided that Weaver was sentenced to ninety-six months imprisonment for second degree stalking, seventy-two months imprisonment for terroristic threatening, and seventy-two months imprisonment for reckless burning. The three sentences were ordered to be served concurrent.

On February 14, 2017, a second amended sentencing order was entered. See Docket Entry 33, Exhibit 4. The purpose of the amendment was to correct Weaver's date of birth and the sentences imposed for the three offenses. The amendment provided that Weaver was sentenced to seventy-two months imprisonment for second degree stalking, twenty-four months imprisonment for terroristic threatening, and twenty-four months imprisonment for reckless burning. The sentences for terroristic threatening and reckless burning were ordered to be served concurrent with each other but consecutive to the sentence for second degree stalking.

Weaver's claim warrants no relief. He can show no prejudice because the amended sentencing orders made no change to the total length of his sentence. He understood that he was being sentenced to ninety-six months imprisonment, and that fact was not changed by either of the amended sentencing orders. Kelley notes that an Arkansas court may correct a judgment after it has been entered so that it will "speak the truth" about what occurred in court. See State v. Rowe, 374 Ark. 19, 285 S.W.3d 614 (2008). See also Turner v. Hobbs, 2012 WL 2312036 (W.D.Ark. 2012). That is what occurred in this instance. The undersigned is not prepared to find that Weaver's right to due process was violated by the process by which the sentencing order was amended.

CATALOG OF COMPLAINTS. Weaver's last claim is comprised of a number of complaints. Specifically, he alleges that his family was not "informed or allowed at court;" "[t]he mental evaluation was rigged;" there was ineffective assistance of counsel and "poor, inappropriate court proceedings; and "[t]he county jail kept the money [he] had on the books …" See Docket Entry 32 at CM/ECF 2.

Weaver's claim warrants no relief for the reasons advanced by Kelley. The undersigned adopts those reasons, which are as follows:

> … The absence of [Weaver's] family at court proceedings, the alleged "rigged" mental examination, and the "poor, [in]appropriate court proceedings all occurred before entry of the guilty plea and, thus, are waived under Boykin [v. Alabama, 395 U.S. 238 (1969)]. None of these claims can afford him federal habeas relief in any event. The record of his plea hearing does not reflect whether or not petitioner's family was present, but even if they were not, the claim does not present a question of federal constitutional law. He again makes a conclusory claim of ineffective assistance of counsel. … [H]e has not shown any basis for relief. He complains of a "rigged" mental evaluation, but earlier, he complained that he did not receive a mental evaluation. Even if an evaluation took place, his complaint does not specify how it was rigged. This conclusory assertion provides him no basis for relief. He does not explain how the court proceedings were inappropriate or how any supposed defects would provide a basis for federal habeas relief. Finally, his claim that the jail "kept" his money has nothing to do with the sentence he is serving or raise a federal constitutional issue that this Court can address.

See Docket Entry 33 at CM/ECF 6-7.

RECOMMENDATION. Weaver's claims are procedurally barred from federal court review and, alternatively, warrant no relief. It is therefore recommended that his petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied.

DATED this 17th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE